UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA *et al. ex rel.* JOHN BAYNE,<br><br>　　　　　Plaintiff-Relator,<br><br>　　v.<br><br>DAVITA INC. *et al.*,<br><br>　　　　　Defendants. | NO.: 18-cv-5528-MRP<br><br><br>Hon. Mia R. Perez |

**RELATOR'S RESPONSE TO DEFENDNATS'
NOTICE OF SUPPLEMENTAL AUTHORITY**

　　In their notice of supplemental authority (Dkt. 82), Defendants argue that the Second Circuit's decision in *U.S. ex rel. Hart v. McKesson Corporation, et al.,* 2024 WL 1056936 (2nd Cir. Mar. 12, 2024) supports their motions to dismiss with respect to willfulness under the Anti-Kickback Statute ("AKS"). A cursory reading of *Hart* shows that it supports Relator's position, not Defendants'.

　　Defendants point to three allegations in *Hart*. First, the relator in *Hart* alleged that while employed at McKesson, "he discussed his concerns about the propriety of McKesson's" conduct with colleagues but "d[id] not allege that the belief was shared by others." *Id.* at *10. This led the Second Circuit to conclude that the relator's "own belief that McKesson's [conduct] was unlawful does not help show that McKesson believed the same." *Id*. In contrast, Relator's complaint here details communications during which **DaVita executives** affirmatively instructed Relator not to communicate in writing regarding the valuation of certain joint ventures, and during which **DaVita executives** who involved in previous joint venture AKS violations told Relator that ROFR's were "the most valuable thing that DaVita can offer to a JV Partner," yet DaVita gave them to potential referral sources for free.  (Dkt. 61 ¶¶ 340-358).

1

Second, Defendants note that in *Hart,* the relator alleged that McKesson had not preserved a video that supposedly substantiated the company's intent. *Id*. However, "there [wa]s nothing to suggest that McKesson attempted to conceal the … video other than the fact that McKesson currently does not possess that video" and the relator did "not allege that McKesson had an obligation to preserve those materials or that McKesson would have normally retained the materials under other circumstances." *Id.* Here, none of Relator's allegations are based on an alleged failure to preserve evidence. Rather, Relator's complaint is based on his own clear visibility into the terms of the joint ventures transactions at issue.

Finally, Defendants point to the Second Circuit's conclusion that an ambiguous reference in a single email was not evidence of willfulness:

> Hart points to his allegation that one of McKesson's senior sales executives sent another McKesson executive an email that stated, "You didn't get this from me . . . ok?" and attached three documents. The attached documents total 170 pages and cover a host of topics, including valuations of over 150 services provided by McKesson. The documents mention the Business Management Tools only five times, buried in discussions and analyses of numerous other topics that have nothing to do with Hart's case.

*Id*. at *10.  In contrast, every piece of evidence detailed in the operative complaint is tied directly to one of the four remuneration schemes, *i.e.,* none of this evidence can be interpreted to apply to anything other than the illegal transactions at issue here.

Finally, there are two aspects of *Hart* which Defendants fail to mention. First, *Hart* did not involve the cornucopia of other evidence reflecting Defendants' willfulness, all of which is detailed in Relator's opposition brief. (Dkt. 74 at 18-21).

Second, unlike Relator here, the relator in *Hart* attempted to retroactively impute willfulness to the defendant based on after-the-fact conduct. Specifically, the *Hart* relator alleged that McKesson "scrubbed" the contents of a computer after receiving a subpoena from the

government during its investigation of the relator's *qui tam* claims. *Id*. at *9. The Second Circuit noted that at most, this "suggests that at some point during this litigation, McKesson determined that [prior conduct] may have been improper," which did not reflect the company's willful mental state ***at the time of the misconduct.*** *Id.* Conversely, the court explained that "courts that have found concealment probative of wrongful intent have typically done so when the concealment happened concurrently with the violation." *Id.* Contrast the facts in *Hart* to those here, where Relator alleges contemporaneous efforts by DaVita to circumvent the creation of inculpatory evidence in the first place, including a company-wide effort to use coded language to disguise violations of the AKS in connection with the very joint ventures at issue, as well as contemporaneous directives from management not to use email to discuss certain transactions. (Dkt. 61 ¶¶ 197, 359-366).

Dated: March 26, 2024

/s/ *Dan Miller*

Daniel R. Miller (PA Bar 68141)
Jonathan Z. DeSantis (PA Bar 316007)
WALDEN MACHT & HARAN LLP
2000 Market Street Ste. 1430
Philadelphia, PA 19103
dmiller@wmhlaw.com
jdesantis@wmhlaw.com

3

## **CERTIFICATE OF SERVICE**

I certify that I caused the foregoing document, and its exhibits, to be filed with the Court through CM/ECF, which will provide a copy to all counsel of record.

Dated: March 26, 2024

/s/ Dan Miller

Daniel R. Miller